IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAMARIO MCFARLENE,

        Plaintiff,

v.                                                                                                      CIV No. 14-147 MV/GBW

CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before me on Plaintiff's Motion to Reverse and Remand the Social Security Administration's (SSA) decision to deny Plaintiff disability insurance benefits. *Doc. 20*. For the reasons discussed below, I recommend that the Court GRANT Plaintiff's motion and REMAND this action to the Commissioner for further proceedings consistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff filed his Title II and XVI applications for disability insurance benefits and supplemental security income on January 20, 2011. Administrative Record (AR) at 19. He alleged a disability onset date of July 1, 2009, on the basis of "Asthma; Epilepsy; [and] Rib Problems." AR at 19, 82. Plaintiff's claims were initially denied on March 28, 2011, and upon reconsideration on July 13, 2011. AR at 19.

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Michelle K. Lindsay on September 5, 2012, in Roswell, New Mexico. AR at 19.

1

Plaintiff's significant other, Moriah Garcia, also appeared and testified, as did vocational expert (VE) Diane Weber.  AR at 19.  Plaintiff was represented at the hearing by his attorneys, Jeffrey B. Diamond and Justin Raines.  AR at 19.

The ALJ issued an opinion on October 11, 2012, finding Plaintiff not disabled within the meaning of the Social Security Act.  AR at 19-27.  In determining whether Plaintiff was entitled to benefits, the ALJ applied the sequential five-step analysis as required by SSA regulations.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Appeals Council denied Plaintiff's request for review on December 12, 2013, making the ALJ's denial of benefits the final decision of the Commissioner for purposes of this appeal.  AR at 1.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence

supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III.   PLAINTIFF'S MEDICAL HISTORY

Plaintiff is a 25-year-old man alleging disability on the basis of a seizure disorder, asthma, and injuries to his ribs. AR at 82, 170.

Plaintiff experienced his first recorded seizure in March 2002, when he was twelve years old. AR at 255. He was examined at the emergency room of Eastern New Mexico Medical Center following an accident in which he fell off his bike. *Id.* Plaintiff had "two tonic-clonic seizures" while in the emergency room. *Id.* The physician also noted a history of "severe persistent reactive airway disease." *Id.*

An EEG was performed on Plaintiff in July 2004. AR at 261. The results were "abnormal due to occasional generalized spike and wave and poly spike and wave discharges." *Id.* The impression was "underlying epileptic tendency of a generalized nature." *Id.*

In September 2007, Plaintiff was again examined at Eastern New Mexico Medical Center after experiencing a grand mal seizure. AR at 262. Plaintiff was assessed with generalized seizure. *Id.* The physician noted that Plaintiff did not have a license and

explained that he was not to drive automobiles due to his medical condition. *Id.*

In February 2010, Plaintiff was seen in the emergency room after having a seizure and hitting his forehead. AR at 266. He was dizzy and presented with a headache. *Id.* Plaintiff reported that he had not been taking his medication because he had no means to pay for it. AR at 271. The impression was epileptic seizure. AR at 268.

Plaintiff returned to Eastern New Mexico Medical Center in August 2012 for a rib injury following a motor vehicle accident. AR at 312-313. He reported pain when breathing and the clinical impression was chest wall pain and contusion on the chest wall. AR at 313.

At the hearing held before the ALJ on September 5, 2012, Plaintiff described the frequency of his seizures as well as their symptoms and residual effects. AR at 40-42.

IV. **THE ALJ'S DECISION**

On October 11, 2012, the ALJ issued a decision denying Plaintiff's application for benefits. AR at 19-27. For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the

5

national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

Here, in denying Plaintiff's request for benefits, the ALJ applied the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of July 1, 2009, through his date last insured of June 30, 2011. AR at 21. At step two, the ALJ determined that Plaintiff had "'severe' impairments consisting of a seizure disorder and asthma." AR at 21. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR at 21-22.

At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels but with the following nonexertional limitations: he can never climb ladders, ropes, or scaffolds; he must avoid unprotected heights and hazardous machinery; he should avoid concentrated exposure to extreme heat, cold, and humidity; and he should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation." AR at 22. The ALJ next concluded that, in light of the RFC, Plaintiff was unable to perform any past relevant work. AR at 25. However, at step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, including as a final assembler, a ticket taker, or a hand packer. AR at 25-26.

V.   ANALYSIS

Plaintiff argues that the ALJ erred at step five of the analysis by (1) failing to resolve a conflict between the VE's testimony and one of the Dictionary of Occupational Titles (DOT) job descriptions, and (2) failing to conduct the proper analysis in determining that Plaintiff can perform other work that exists in significant numbers in the national economy.  Plaintiff further requests that the Court remand for an immediate award of benefits.  I recommend finding that the ALJ erred at step five of the analysis by failing to correctly calculate the number of jobs potentially available to Plaintiff, and remanding for further proceedings consistent with this opinion.

A.   **The ALJ Erred at Step Five of the Analysis**

> 1.  *The ALJ erred in failing to resolve the conflict between the VE's testimony and the Dictionary of Occupational Titles*

Plaintiff argues that the ALJ erred by failing to resolve a conflict between the VE's testimony and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), the companion volume to the DOT.

Before an ALJ may rely on the testimony of a vocational expert to support a decision that a claimant is not disabled, he must "elicit a reasonable explanation" for any "apparent unresolved conflict between VE . . . evidence and the DOT."  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information."  *Id.*  This rule

7

applies equally to conflicts with the DOT and with the SCO. *Id.* at *1-2.

Here, the VE testified that, given Plaintiff's residual functional capacity, which included the "need to avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gages and poor ventilation," one of the jobs available to him was a Hand Packer, DOT code 920.587-018. AR at 59-60. However, the SCO provides that this job actually requires frequent exposure to "fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." AR at 232-235. The VE failed to note this discrepancy, and affirmed that her testimony was consistent with the Dictionary of Occupational Titles. AR at 67-68. Plaintiff's attorney later notified the ALJ of the apparent conflict in a post-hearing brief. *See* AR at 203-204.

I agree with Plaintiff that there is an apparent conflict between the VE's testimony that the job of hand packer complied with Plaintiff's RFC, and the limitations of this job noted in the SCO. Thus, I recommend finding that the ALJ was required to explain and resolve this conflict, and that her failure to do so was error. SSR 00-4p, 2000 WL 1898704, at *2; *see also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

The Commissioner argues that the ALJ did not err because she "expressly inquired of the vocational expert whether her testimony was consistent with the DOT, and the vocational expert replied that it was." *Doc. 25* at 14. However, this does not remedy the error because the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified," and she was duly notified of the apparent conflict in Plaintiff's post-hearing brief. SSR 00-4p, 2000 WL 1898704, at *4.

8

2. *The ALJ erred in determining that significant jobs existed in the national economy*

Plaintiff also contends that the ALJ erred in arriving at her conclusion that significant jobs existed in the national economy that Plaintiff could perform.

At step five, the burden is on the ALJ to "identify specific jobs that the claimant can perform with the restrictions the ALJ has found the claimant to have, and verify that the jobs the claimant can do exist in significant numbers in the regional or national economies." *Haddock*, 196 F.3d at 1088-89. As always, "these findings must be supported by substantial evidence." *Id.* at 1089.

The question of what constitutes a significant number of jobs "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). In fact, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number,'" and has explicitly "reject[ed] the opportunity to do so." *Id.* However, in *Trimiar v. Sullivan*, the court did enumerate several nonexclusive factors that should go into the ALJ's determination, including "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). The ALJ's "[f]ailure to apply the correct legal test [set forth in *Trimiar*] constitutes grounds for reversal." *Salas v. Chater*,

9

950 F. Supp. 316, 320 (D.N.M. 1996) (report and recommendation adopted without alteration).

Plaintiff argues that the ALJ relied on incorrect figures in finding that a significant number of jobs existed in the national economy, and failed to perform the requisite *Trimiar* analysis. At the hearing, the VE testified that, given Plaintiff's RFC, he could perform the jobs of final assembler, ticket taker, and hand packer. AR at 59-60. Plaintiff's attorney later elicited testimony from the VE that there were 4,718, 3,378, and 6,002 positions available for each type of job, respectively. Further, only 28.8% of ticket taker jobs were full time. Considering only full-time jobs and setting aside the position of hand packer as potentially inconsistent with Plaintiff's RFC, this leaves fewer than 6,000 full-time jobs available nationally that Plaintiff can perform.

The ALJ concluded in her opinion that, with respect to the jobs Plaintiff is capable of doing given his RFC, "the numbers provided are significant." AR at 26. However, she manifestly relied on the wrong figures. In sharp contrast to the 6,000 full-time jobs available nationally calculated above, the ALJ wrote that final assembler, ticket taker, and hand packer had 235,000, 105,000, and 676,000 jobs available—for a total of more than one million jobs nationally. AR at 25. However, as the VE testified, these numbers do not correspond to the jobs of final assembler, ticket taker, and hand packer, but rather to the groups of occupations that these jobs fall into. AR at 61-66. Thus, when the ALJ concluded that the number of jobs available to Plaintiff was significant, she erroneously relied on a figure of over one million rather than on the

10

closer figure of less than 6,000. *See Carpenter v. Astrue*, 537 F.3d 1264, 1270 (10th Cir. 2008).

The ALJ also failed to consider any of the *Trimiar* factors in determining that the number of jobs was significant. These factors would likely have weighed in Plaintiff's favor, as he is unable to drive due to his seizure condition and thus cannot travel long distances to work. *See Trimiar*, 966 F.2d at 1330 (one factor the ALJ should consider is "the distance claimant is capable of travelling to engage in the assigned work").

Plaintiff argues that the ALJ erred in finding a significant number of jobs in the national economy by considering the incorrect figures and by failing to apply the *Trimiar* factors. The Commissioner argues that the three jobs discussed by the VE and the ALJ were merely "representative" of the jobs Plaintiff could perform. While this may be true, the VE gave no indication of how many other jobs corresponded with Plaintiff's RFC, and thus gave the ALJ no opportunity to determine that the number was significant.

For the foregoing reasons, I recommend that the Court find that the ALJ erred at step five of the analysis. This would not indicate that 6,000 jobs in the national economy is, as a matter of law, an insignificant number. It falls solely to the ALJ to make that determination, and the Court should "not presume to interpose [its] judgment for that of the ALJ." *Trimiar*, 966 F.2d at 1330-1332. However, because the number of potential jobs available to Plaintiff was not correctly calculated, I recommend remanding this case for further proceedings consistent with this opinion.

B. **The Court Should Not Remand for an Immediate Award of Benefits**

Plaintiff requests that the Court remand for an immediate award of benefits. He argues that the burden at step five fell to the Commissioner, and that both the ALJ and the Appeals Council persistently failed to recognize or remedy the error at this step.

"[I]t is within [a] court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). However, generally "remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotation omitted). I do not believe that to be the case here, and therefore recommend that the case be remanded for further administrative proceedings.

VI. CONCLUSION

For the reasons stated above, I recommend finding that Plaintiff has demonstrated that the ALJ erred at step five of the analysis. Accordingly, I recommend that Plaintiff's Motion to Reverse or Remand be GRANTED, and that this case be REMANDED to the Commissioner for further proceedings consistent with this opinion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE